# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Manuel G., | Case No. 26-CV-2385 (SRN/ECW) |
| Petitioner, | |
| v. | **ORDER** |
| Todd Blanche, Acting Attorney General; Markwayne Mullin, Secretary, U.S. Department of Homeland Security; Todd Lyons, Acting Director of Immigration and Customs Enforcement; David Easterwood, Acting Director, St. Paul Field Office Immigration and Customs Enforcement; and Eric Tollefson, Sheriff of Kandiyohi County, | |
| Respondents. | |

David Thomas Kubat, Zimmer Law Group, 155 Wabasha St. S., Ste. 100, Saint Paul, MN 55107, for Petitioner

Ebony Nicole Thomas and David W. Fuller, U.S. Attorney's Office, 300 S. 4th St., Ste. 600, Minneapolis, MN 55415, for Respondents

SUSAN RICHARD NELSON, United States District Judge

Before the Court is the Petition for a Writ of Habeas Corpus ("Petition") [Doc. No. 1] filed by Petitioner Manuel G. Petitioner seeks immediate release from detention, or a prompt bond hearing in Immigration Court. Respondents oppose the Petition. (Resp'ts' Opp'n [Doc. No. 5].)

The Court has taken the Petition under advisement on the papers. For the reasons set forth below, the Petition is granted as to the request for an individualized bond hearing.

1

## I.    BACKGROUND

Manual G. is a resident of Thief River Falls, Minnesota, and a citizen of Mexico who has lived in the United States since April 1998. (Pet. ¶ 13.)  At that time, Petitioner entered the United States without inspection. (*Id.*)  On March 12, 2015, he was arrested for being an alien present without admission or parole, removal proceedings were initiated, and he was released on his own recognizance.  (*Id.* ¶ 14; Pet'r's Reply Ex. [Doc. No. 7-1] (2015 I-831 Record of Inadmissible Alien) at 2–4.)  Immigration records indicate that on September 24, 2021, an Immigration Judge granted his motion to administratively close removal proceedings.  (Sabin Decl. [Doc. No. 6], Ex. C (2026 Form I-831 Record of Inadmissible Alien) at 3.)  Manuel G. is not subject to a pending removal order.  (Pet. ¶ 14.)

Manuel G. asserts that he has been actively pursuing lawful residence in the United States.  (*Id.* ¶ 18.)  On May 12, 2020, USCIS approved an initial application, Form I-130, Petition for Alien Relative, filed by his U.S. citizen spouse. (*Id.*)  On June 30, 2025, USCIS also approved Manuel G.'s application for a waiver of inadmissibility, Form I-601A.  (*Id.*)  Manuel G. states that he is awaiting scheduling for an immigrant visa interview with the U.S. Consulate in Ciudad Juarez, Mexico.  (*Id.* ¶ 19.)  Interviews are scheduled based on the timing of the applicant's completion of pre-clearance processes, known as "Documentary Qualification." (*Id.*)  Manuel G. alleges that he was documentarily qualified on July 23, 2025. (*Id.*)  He contends that recent estimated interview scheduling information from the U.S. State Department shows that Ciudad Juarez is currently scheduling visa interviews for applicants who were documentarily qualified in April 2025.  (*Id.*)  In

addition, Manuel G. alleges that he has attended every immigration hearing, complied with all check-in requirements, and responded to every agency request for information. (*Id.* ¶ 21.)

Manuel G. has a history of driving-while-impaired ("DWI") offenses in Minnesota state court, some of which involve the use of his brother's name. (Sabin Decl. ¶¶ 11–18.) On June 3, 2025, he was convicted of the misdemeanor charge of obstructing the legal process, and a charge of DWI was dismissed. (Pet. ¶ 22; Sabin Decl. ¶ 18.) Respondents assert that Manuel G. has additional impaired driving convictions in Minnesota, including: (1) a 2000 DWI misdemeanor conviction for which he was sentenced to one year of supervised probation; (2) a 2012 DWI conviction for which he was sentenced to 30 days confinement and one year of supervised probation; and (3) a 2014 DWI conviction for which he was sentenced to one year confinement (stayed) and six years of supervised probation. (Sabin Decl. ¶¶ 11–17.) For the convictions in 2000, 2012, and 2014, Manuel G. provided his brother's name instead of his own when he was arrested. (*Id.*) His 2015 Form 831 Record of Inadmissible Alien notes the convictions from 2000, 2012, and 2014. (Pet'r's Reply Ex. (2015 Form 831 Record of Inadmissible Alien) at 2.)

On January 28, 2026, when Manuel G. appeared for his required check-in with U.S. Immigration and Customs Enforcement ("ICE") in Grand Forks, North Dakota, ICE agents arrested him. (Pet. ¶ 15.) He alleges that he was arrested without a warrant. (*Id.*) Deportation Officer Ivan Sabin states that during the check-in, ICE agents conducted a routine records check and found Manuel G.'s driving convictions, which prompted his detention in order "to continue removal proceedings." (Sabin Decl. ¶ 9.) Officer Sabin

3

contends that at that time, agents advised Manuel G. that he was under arrest and served a Form I-200 Warrant of Arrest upon him.  (*Id.* ¶ 10; *see also id.*, Ex. B.)  In Petitioner's Reply, he describes Respondents' assertions about the timing of the warrant's issuance as "muddled," and contends that the warrant was not issued before his arrest, as required. (Reply at 4) (citing Sabin Decl., Ex. C (2016 Form I-213 Record of Inadmissible Alien) at 2.)

Following his January 28, 2026 arrest, ICE initially detained Manuel G. in North Dakota before transferring him to the Kandiyohi County Jail in Wilmar, Minnesota, where he is currently detained.  (Pet. ¶ 16.)

On April 27, 2026, Manuel G. filed the instant Petition in which he asserts that his detention is unlawful under the Due Process Clause of the Fifth Amendment.  (*Id.* ¶¶ 27–38.)  He further contends that because his detention falls under 8 U.S.C. § 1226, his detention is statutorily unlawful because he was detained without a warrant, as the statute requires.  (*Id.* ¶ 42.)  Petitioner requests immediate release from detention or a bond hearing.  (*Id.* ¶¶ 1, 43.)  The Court ordered Respondents to answer the Petition by May 1, 2026, and enjoined them from moving Petitioner from this District pending further order. (Order to Show Cause [Doc. No. 3] ¶ 4.)  Respondents timely filed their Response, along with the Declaration of Deportation Officer Ivan Sabin, and three accompanying exhibits [Doc. Nos. 6-1 – 6-3].  Petitioner filed a timely Reply [Doc. No. 7], and an accompanying exhibit [Doc. No. 7-1].

## II.    DISCUSSION

A district court may grant a writ of habeas corpus to any person who demonstrates

he is in custody in violation of the Constitution or laws of the United States.  28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### A.  Fifth Amendment Due Process

Respondents argue that Manuel G. is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), relying on the Eighth Circuit's decision in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026).[1]  (Resp'ts' Opp'n at 6–7.)  In *Avila*, a divided panel of the Eighth Circuit interpreted § 1225(b)(2)(A) to require the mandatory detention of any noncitizen present in the United States who has not been admitted, regardless of whether they have just arrived at the border or have been present in the interior of the country for some time, like Petitioner.  170 F.4th at 1135–38.  While the Fifth Circuit has also interpreted § 1225 consistent with the Eighth Circuit, *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), the Eleventh Circuit and Second Circuit have reached the opposite conclusion, finding that persons who have been in the country and are not newly arrived at the border fall under 8 U.S.C. § 1226, and are entitled to a bond hearing.  *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, No. 25-14065, 2026 WL 1243395, at *5–22 (11th Cir. May 6, 2026); *Cunha v. Freden*, --- F.4 ---, No. 25-3141-pr, 2026 WL 1146044, at *4–23 (2d Cir. Apr. 28, 2026).[2]

---

[1] The Eighth Circuit has extended the period for Mr. Avila to seek rehearing to May 26, 2026.  *Avila*, No. 25-cv-3248, Judge Order (8th Cir. Apr. 21, 2026).

[2] A recent decision from the Seventh Circuit was divided on the §§ 1225/1226 issue. *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, --- F.4th ---, No. 25-3050, 2026 WL 1223250 (7th Cir. May 5, 2025).  In *Castañon-Nava*, the government challenged the district court's extension of a consent decree and an order to release certain class members whose arrests potentially violated 8 U.S.C. § 1357(a)(2).  *See id.* at *1.  Judge Lee, writing the

While *Avila* addressed a noncitizen's statutory rights, it did not address his due process rights. 170 F.4th at 1140 & n.8 (Erickson, J., dissenting). As noted, Manuel G. invokes the Due Process Clause in support of his request for relief. (Pet. ¶¶ 31–38.) Noncitizens are entitled to due process of the law under the Fifth Amendment. *Demore v. Kim*, 538 U.S. 510, 523 (2003); *Sanchez-Valasco v. Holder*, 593 F.3d 733, 737 (8th Cir. 2010). To determine whether civil detention violates a detainee's Fifth Amendment due process rights, courts apply the three-part balancing test in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under *Mathews*, courts weigh the following three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

Respondents argue that detention under a constitutionally legitimate statute enacted by Congress does not violate due process, relying on *Brayam G.G. v. Bondi*, No. 26-cv-1985 (DMT/EMB), Doc. No. 22 ¶ 8 (D. Minn. Apr. 15, 2026), in which the court denied a habeas petitioner's due process claim. *Brayam G.G.*, in turn, relied on *Demore v. Kim*, in which the Supreme Court rejected the argument that mandatory detention pending removal

---

majority opinion, engaged in §§ 1225/1226 statutory analysis and rejected the government's alternative argument that it could detain class members under § 1225(b)(2)(A). *Id.* at *9–21. However, the concurring opinion found it unnecessary to reach the alternative argument, *id.* at *26 (Pryor, J., concurring), and the dissenting opinion disagreed with Judge Lee's statutory analysis, *id.* at *34 (Kirsch, J., dissenting).

violates a noncitizen's due process rights.  In *Demore*, the Supreme Court addressed mandatory detention pending removal under § 1226(c) involving a noncitizen with criminal convictions for first-degree burglary and petty theft.  538 U.S. at 513.  The Supreme Court held that "detention under Section 1226(c) has a definitive end-point—the end of the removal proceedings—and thus a noncitizen is not subject to indefinite detention."  *Id.* at 529.  The court in *Brayam G.G.* acknowledged that the petitioner before it was detained under a different provision of the Immigration and Nationality Act ("INA"), § 1225(b), but found that provision analogous to § 1226(c).  *Brayam G.G.*, Doc. No. 22 ¶ 8.

Respondents argue that the *Mathews*' balancing test is therefore unnecessary, relying upon *Banyee v. Garland*, 115 F.4th 928, 933 (8th Cir. 2024), in which the Eighth Circuit rejected a procedural due process claim brought by a noncitizen who was detained under § 1226(c).  The petitioner had a lengthy criminal history that included theft, lying to the police, drug possession, and robbery with a dangerous weapon.  *Id.* at 930.  The Eighth Circuit pointed to Supreme Court authority in *Demore*, 538 U.S. at 528, and *Zadvydas*, 533 U.S. at 682, finding that they "leave no room for a multi-factor 'reasonableness' test." *Banyee*, 115 F.4th at 933.  Thus, the court found the petitioner was not entitled to an individualized review.  *Id.* at 933–34.

The Court respectfully disagrees with *Brayam G.G.*, which is not controlling authority.  As to *Banyee*, "it is not clear that *Banyee* applies to the facts of this case." *Axel J.M.C. v. Stanski*, No. 26-cv-2281 (JRT/EMB), 2016 WL 1171344, at *3 (D. Minn. Apr. 29, 2026) (citing *Orlando R.V.V. v. Blanche*, No. 26-cv-1903, Doc. No. 11 (D. Minn. Apr. 28, 2026)).  Mandatory detention under 1226(c) applies to certain noncitizens who have

7

committed enumerated criminal offenses and to certain categories of inadmissible people. 8 U.S.C. § 1226(c)(1)(A)–(E).  In *Demore*, the Supreme Court explained that "Congress, justifiably concerned that deportable criminal [noncitizens] who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for the brief period necessary for their removal proceedings" under § 1226(c).  538 U.S. at 513.  Thus, the Court concluded that detaining such noncitizens for the time necessary to process their removal, without an individualized determination of flight risk, did not violate the Due Process Clause.  *Id.* at 522–31.

Respondents' purported basis for Manuel G.'s detention is § 1225(b)(2)(A), not § 1226(c), which distinguishes this case from *Banyee* and *Demore*.  Only recently has the Government interpreted § 1225(b)(2)(A) to permit mandatory detention.  *See Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1150 (D. Minn. 2025); *see also Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).  There is no indication that Manuel G., whom Respondents have categorically detained under § 1225(b)(2)(A), has ever failed to appear in court related to his DUI charges or engaged in violent criminal activity.  Nor is there any evidence that he has failed to comply with the check-in requirements for his immigration proceedings. Accordingly, the Court proceeds to address the merits of Manuel G.'s due process claim under *Mathews*, 424 U.S. at 335.

**B. Due Process Analysis**

As to the first *Mathews* factor—the private interest affected by the official action— "[t]he interest in being free from physical detention" is "the most elemental of liberty

8

interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 531 (2004).  Petitioner is currently in custody in the Kandiyohi County Jail, at which pretrial criminal detainees and convicted criminals are also held.  *See Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2005) (stating that under the first *Mathews* factor, courts "consider the conditions under which detainees are currently held, including whether a detainee is held in conditions indistinguishable from criminal incarceration.").  He also has a strong interest in remaining in the United States, as he is married to a U.S. citizen and has been actively pursuing lawful permanent residence.  (Pet. ¶¶ 18–20.)  He has lived in the United States for approximately 28 years, having arrived in 1998 when he was approximately 18 years old.  (*Id.* ¶ 13; *see also* 2026 Form I-831 Record of Inadmissible Alien at 1 (listing date of birth)).

Respondents cite *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), for the proposition that Petitioner's private interest is limited by his status because he is not a lawfully admitted noncitizen challenging his discretionary detention after lawful entry.  (Resp'ts' Opp'n at 8.)  But Manuel G., unlike the petitioner in *Thuraissigiam*, challenges his detention, not his expedited removal.  *Thuraissigiam*, 591 U.S. at 118 (noting that Thuraissigiam failed to seek release or dispute the legality of his confinement).  Also, *Thuraissigiam* concerned an as-applied challenge to the expedited review process, filed by a petitioner who was apprehended 25 yards from the border and was thereafter continuously detained.  *Id.* at 119.  By contrast, Manuel G. squarely challenges his detention, and he has been living in the United States for approximately 28 years, and only recently appears to have been held in immigration detention.

Given the significance of the private interest at stake, the Court finds that the first *Mathews* factor favors Manuel G.

As to the second *Mathews* factor—the risk of erroneous deprivation—courts must "assess whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." *Günaydin*, 784 F. Supp. 3d at 1187. Given the "extent and velocity of Respondents' immigration-related actions in Minnesota over the past several months," there is a high degree of risk of the erroneous deprivation of Manuel G.'s private rights. *See Axel J.M.C.*, 2026 WL 1171344, at *4.

Respondents return to § 1225(b), however, and argue that the risk of erroneous deprivation turns on objective statutory predicates—that Petitioner entered the United States without inspection and lacking lawful status. (Resp'ts' Opp'n at 8–9.) They contend that discretionary findings of danger or flight risk are not material to detention under § 1225, relying on *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1, 4 (2003) ("*DPS*"). (*Id.* at 9.) *DPS* involved a procedural due process challenge to Connecticut's sex offender registry statute that required all sex offenders with prior convictions to register. 538 U.S. at 1162–63. The Supreme Court held in that context, procedural due process did not require a pre-registration hearing to determine an offender's current dangerousness because the statutory registration requirement depended on the fact of conviction alone. *Id.* at 1163-65 (stating that the Due Process Clause "does not require the opportunity to prove a fact that is not material to the State's statutory scheme."). Further, the Court observed that sex offenders had already been afforded procedural due process in

10

their underlying proceedings leading to their convictions. *Id.* at 1164 ("As the DPS Website explains, the law's requirements turn on an offender's conviction alone—a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest."). The situation here is different than in *DPS*. Respondents are detaining Manuel G. pursuant to § 1225(b)(2)(A), under which no analogous underlying proceeding has afforded him an opportunity to contest his detention. Moreover, in 2015, ICE released Manuel G. from immigration custody on his own recognizance, with full knowledge of three prior DWI convictions. Presumably, he was deemed to pose no danger to the community and was not a flight risk.

Providing Manuel G. a bond hearing is an alternative procedure that would ameliorate the risk of erroneous deprivation. The Court finds that this factor also favors Manuel G.

As to the third *Mathews* factor—the burden the Government would bear in affording additional procedural safeguards—Respondents claim their interest is substantial. (Resp'ts' Opp'n at 9.) They contend Manuel G.'s criminal history "demonstrates a persistent pattern of alcohol-related offenses, deception, and disregard for legal authority spanning more than twenty years." (*Id.*) In addition, as a general matter, Respondents argue that Congress has a strong interest in the uniform administration of immigration laws, and "in avoiding the administrative burdens of grafting onto § 1225 a bond-hearing regime Congress did not create." (*Id.* at 10.)

While the Court appreciates the importance of ensuring attendance at removal proceedings and protecting the public, those interests are not subverted by requiring the

minimal procedural safeguard of a bond hearing. Given Manuel G.'s regular attendance at immigration check-ins (Pet. ¶ 21), ICE has known of his circumstances, his criminal history, and his whereabouts for some time. (*See* Pet'r's Reply Ex. at 2.) An immigration judge will consider Manuel G.'s particular circumstances, along with the Government's interests, in determining whether release on bond is appropriate. Thus, a bond hearing will reduce the risk of erroneous deprivation without imposing significant burdens on Respondents. The Court finds that consideration of the third *Mathews* factor favors Petitioner.

In sum, the *Mathews* factors weigh in Petitioner's favor. As courts have found, the appropriate remedy is an individualized bond hearing. *See, e.g., Heriberto R.E. v. Blanche*, No. 26-cv-2227 (JWB/LIB), No. 12 at 8 (D. Minn. May 1, 2026); *Axel J.M.C.*, 2026 WL 1171344, at *4; *Orlando R.V.V.*, Doc. No. 11 at 20–21; *David J.C.P. v. Blanche*, No. 26-cv-2181 (DWF/ECW), 2026 WL 1102725, at *3 (D. Minn. Apr. 23, 2026); *Osman J.M.A. v. Blanche*, No. 26-cv-2123 (DWF/DJF), 2026 WL 1005056, at *3 (D. Minn. Apr. 14, 2026). While Petitioner requests immediate release under § 1226, arguing that he was arrested without a warrant, the Court declines to grant such relief for three reasons. First, the sequence of events (warrant, followed by arrest versus arrest, followed by warrant) is not entirely clear from the record, which does contain a warrant bearing the same date as Manuel G's arrest. (Sabin Decl., Ex. B.) Second, under *Avila*, Respondents contend Petitioner is subject to mandatory detention under § 1225(b)(2)(A). Third, Petitioner's claims arise under the Fifth Amendment, for which a bond hearing is the appropriate

12

remedy. Accordingly, the Court grants Manuel G.'s Petition as to his request for a bond hearing.

### III.    ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that

1.    The Petition for Writ of Habeas Corpus [Doc. No. 1] is **GRANTED** as follows:

   a.  Petitioner's detention without an individualized bond hearing violates his rights under the Due Process Clause of the Fifth Amendment.

   b.  Respondents shall provide Petitioner with a bond hearing before an Immigration Judge in Minnesota within **7 business days** of this Order.

   c.  Respondents remain **ENJOINED** from removing, transferring, or otherwise facilitating the removal of Petitioner from the District of Minnesota before the bond hearing and the Immigration Judge's ruling.

   d.  If Respondents do not provide Petitioner with a bond hearing as required by this Order, Petitioner must be immediately released from detention.

   (1)  In the event that Respondents release Petitioner, they must do so: (a) in Minnesota; (b) with all personal documents and belongings, such as his driver's license, passport, other immigration documents, and cell phone; (c) without any new conditions on release, including but not limited to requiring Petitioner to sign a new "Order of Release on Recognizance" or requiring Petitioner to enroll in and complete an "Alternatives to Detention" program; (d) without any tracking devices or use of a tracking application; and (e) with all clothing and outerwear he was wearing at the time of detention, or other proper attire.

13

(2) In addition, Respondents shall provide reasonable advance notice to Petitioner's counsel to arrange for his safe release. Petitioner's counsel is David Thomas Kubat and can be reached at 612-436-7105; dkubat@zimmigration.com.

e. By 5:00 p.m., two days after the bond hearing, the parties shall provide the Court with a status update concerning the results of any bond hearing conducted pursuant to this Order, or if no bond hearing was held, advise the Court regarding Petitioner's release. Further, the parties shall advise the Court whether any additional proceedings in this matter are required.

Dated: May 7, 2026                                          s/Susan Richard Nelson
                                                            SUSAN RICHARD NELSON
                                                            United States District Judge

14